UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALPHONSO DERAY WALKER,

                              Petitioner,

v.

WILLIS CHAPMAN,

                              Respondent.

Case No. 19-cv-10012

Honorable Shalina D. Kumar
United States District Judge

---

**OPINION AND ORDER DENYING AMENDED PETITION FOR A WRIT OF HABEAS CORPUS (ECF NO. 7) AND DENYING A CERTIFICATE OF APPEALABILITY**

---

Petitioner Alphonso Deray Walker, currently incarcerated in a Michigan correctional facility, filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254. Through the assistance of counsel, he challenges his convictions of armed robbery, M.C.L. 750.529; unlawful imprisonment, M.C.L. 750.349(b); second-degree criminal sexual conduct, M.C.L. 750.520(c); assault with intent to commit great bodily harm less than murder, M.C.L. 750.84; felon in possession of a firearm, M.C.L. 750.224f; felonious assault, M.C.L. 750.82; and six counts of possession of a firearm during the commission of a felony-second offense, M.C.L. 750.227b(b). In

his amended habeas petition, he raises three grounds for relief concerning his pre-arrest delay and ineffective assistance of counsel.

For the reasons provided below, the Court concludes that Petitioner's claims do not warrant relief and denies the petition and a certificate of appealability.

## I.   BACKGROUND

On June 4, 2015, an Oakland County jury convicted Petitioner of armed robbery, unlawful imprisonment, second-degree criminal sexual conduct, assault with intent to commit great bodily harm less than murder, felon in possession of a firearm, felonious assault, and six counts of possession of a firearm during the commission of a felony-second offense. In its opinion on direct appeal, the Michigan Court of Appeals adequately summarized the facts, which are presumed to be correct on habeas review. *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

> On December 21, 2012, defendant asked the victim to go to his former residence and wait there for a man who was coming to inspect the house before renting it. Because the victim knew defendant and his family, she agreed to do so. The victim's mother drove her from defendant's current home on Cedardale Avenue to his former house on Linda Vista Drive in Pontiac, Michigan, where defendant was waiting for them in his daughter's car. They agreed that the victim would call her mother when she was ready to be picked up. The victim's mother saw the two of them walk into the house and then she drove away.

The victim testified that she and defendant entered the empty house and that defendant brought a piece of a sectional sofa upstairs from the basement so that she would have someplace to sit while she waited. Defendant then left after telling her that he would be close by and to call him when the man showed up.

The victim brought along a laptop bag containing her laptop computer, a notebook, her black Coach purse, an iPod, and her cell phone. She spent about an hour using her laptop computer and smoking some marijuana before defendant returned. Defendant asked her to call her mother and tell her that he was bringing her back to his home on Cedardale, and she did so. Her mother testified that she called around 1:27 p.m. and said that she was ready to go and that "they" were driving to the Cedardale house. The victim's mother was at home when she received this call so she drove to the Cedardale house to wait.

Before they left the Linda Vista house, defendant started taking the sectional sofa back downstairs, but it got stuck in the door, so he asked the victim to help him. She assisted him in getting the couch back in the basement, which was covered in water; defendant explained that he was draining the hot water heater. They moved the couch to a drier part of the basement floor and when they placed it down, the victim turned to find defendant pointing a black handgun at her; he said that "when I see one of these I should know it's a stick up." At first, she thought he was "showing off," but he started hitting her, punching her in the face and striking her with the butt of the gun. Defendant also grabbed her braids and tried to turn her around so that she would be straddling the couch facing away from him, but she struggled to keep him from doing so. She kept asking him, "Why are you doing this? We know you, you know us. What are you doing this for? You don't have to do this." Defendant responded: "Bitch, you think I'm playing? This is a stick up! You think I'm playing with you?" The victim indicated that he was either holding the handgun or that it was nearby on the basement floor while this struggle was taking place. At one point, he shot the gun; the victim thought he shot it in her direction but acknowledged having told the police that he shot the gun into the basement floor.

3

While they were struggling, defendant was pulling the victim's clothes off until she was wearing only her panties. He began searching her body, touching her breasts, and asking if she had any money. He dragged her into a bathroom, reached into her vagina, and pulled out a tampon, saying: "Now I have to tell my wife I touched your p——y." Thinking that it might get him away from her, the victim, who was menstruating, told defendant she had fresh tampons in her purse and he went upstairs to get one. He found a used tampon in her purse that she had intended to dispose of later, so he accused her of lying and started beating her again.

Defendant was choking the victim, pulled her back and forth through the water on the basement floor, put her face in the water, covered her head with her coat and kicked her in her side, pulled her hair, wrapped her braid around her neck, wrapped her bra and her scarf around her neck, strangling her, and wrapped his tie tightly around her neck. She coughed up bloody phlegm and blacked out.

Defendant then shut the victim in the basement bathroom. She thought he had walked away, but when she opened the door, he was standing there pointing the gun at her. He told her to sit on the toilet and then used her scarf to tie her to the toilet. She complained that she was cold, so he threw her hoodie and a blanket at her.

The victim heard defendant walking around upstairs, and then she heard a door close, so she thought he had left the house. She worked her hands free, forced the bathroom door open, grabbed the blanket, and ran upstairs and out of the house through the back door. On her way out, she noticed that her purse and other personnel (sic) items were gone. As she ran toward the street, she saw defendant sitting in his car, which was backed into the driveway. Defendant got out of the car with the gun in his hand and began chasing her. She began screaming and yelling as she ran away from him. The first person she saw said she would call the police but otherwise declined to help, so she continued running. Defendant caught up with her, grabbed

4

the blanket off of her, and kept repeating, "Give me the dope! Give me the money! Where's your money!" The victim responded, "You have everything, my purse, you have everything!" She continued to run until a woman invited her inside and called the police. Ultimately, the victim was taken to the hospital where she remained for three days. Among other injuries, she was in great pain, her eyes were red and swollen so that she could not see, she could hardly hear, she could not breathe out of her nose, she had bruises on her face and body, and some of her hair had been pulled out.

The victim's mother testified that she grew concerned when defendant and her daughter had not returned to the Cedardale home, so she called her daughter's cell phone but the call went straight to voice mail. She then called defendant's cell phone and he answered in a panicked voice. He claimed that that they had been robbed, he had been shot, and her daughter had run off down the street.

The police examined the Linda Vista house and discovered what appeared to be blood by the back door handle and on the kitchen tile floor. In the basement they found several inches of water, blood on the bathroom walls, and what appeared to be a bullet hole in the wall; however, they did not find a bullet. They found two gold earrings on the floor, along with a tampon and tampon wrapper, and more blood.

The police were unable to locate defendant, but they did locate the car he had been driving. They noticed what appeared to be blood on the steering wheel and on the driver's side door jamb. In the trunk they located the victim's purse and a wet blanket. Over the succeeding 18 months, the police kept several homes associated with defendant under periodic surveillance, spoke with neighbors, and questioned his family, but they were denied permission to search the Cedardale home and they could not locate defendant. Finally, in June of 2014, defendant was apprehended after he was found riding a bicycle near the Cedardale home.

At trial, defendant testified that the victim had arranged to have a Federal Express package delivered to the house on Linda Vista and that she had asked him to meet her there. Defendant claimed that shortly after the victim arrived she began complaining of menstrual cramps so he drove back to the Cedardale house to get something for the pain. He said that on the way the victim insisted on being taken back to the Linda Vista house because she was afraid she would miss delivery of the package. When they returned, she insisted on going inside and since he did not have the keys given that the home had been foreclosed and he no longer owned it, she broke the glass on the back door and entered. Defendant claimed he drove back to the Cedardale home, obtained Motrin, and returned to the Linda Vista home to find the victim by the side of the house wearing a blanket. He denied hitting her with a gun, firing a gun, pulling a tampon out of her or doing anything bad to her. He explained that the law prohibited him for having a gun and he denied having one on that date. He said he had no idea how her purse had gotten into the trunk of the car he had been driving. He denied stealing the purse or any of the electronic equipment or holding a gun on her and demanding drugs or money. He further denied calling the victim's mother and telling her that they had been robbed and shot at.

Defendant suggested that the victim and her mother were making the whole story up because they did not want anyone to know that they were receiving the Fed Ex package. Defendant produced a Fed Ex ticket that showed a delivery (or attempted delivery) on December 20, 2012, the day before the incident. He claimed he obtained the ticket when he went to the Linda Vista home to pick up some mail that was still being delivered to that location. Defendant also presented a "relocation agreement" that he claimed established that he had an agreement with a realtor to clean out and vacate the foreclosed Linda Vista home in return for the payment of $1,250. The prosecutor objected to this agreement and it was not admitted into evidence.

*People v. Walker*, 2016 WL 7233687, at *1-3 (Mich. Ct. App. Dec. 13, 2016).

6

The trial court sentenced Petitioner to a term of 37.5 to 60 years in prison for the robbery conviction and to lesser terms for the other convictions. *Id.* On direct appeal, Petitioner claimed that he was prejudiced by the delay in arresting him, that his trial attorney was ineffective for failing to obtain certain evidence to support his defense, and that the sentence imposed by the trial court was disproportionate, but the Michigan Court of Appeals found no merit in Petitioner's claims and affirmed his convictions and sentence in an unpublished, per curiam decision. *See id.* at *1. On October 3, 2017, the Michigan Supreme Court denied leave to appeal. *See People v. Walker*, 901 N.W.2d 600 (Mich. 2017).

On January 2, 2019, Petitioner filed a Memorandum of Law in Support of Petition for Writ of Habeas Corpus. ECF No. 1. He alleged as grounds for relief that (1) the unreasonable delay between the date he was charged and his arrest and arraignment date violated his right to a fair trial under the Fifth Amendment, and his trial attorney's failure to raise this issue in the trial court violated his right to effective assistance of counsel; (2) such unreasonable delay also violated his right to a speedy trial under the Sixth Amendment; trial counsel's failure to raise this issue in the trial court and appellate counsel's failure to raise the issue of trial counsel's ineffectiveness violated his Sixth Amendment right to effective assistance

7

of counsel; and (3) trial counsel's failure to adequately investigate the case violated his Sixth Amendment right to effective assistance of counsel, and appellate counsel's failure to raise the issue of trial counsel's ineffectiveness violated his right to effective assistance of appellate counsel. *Id*. at PageID.14, 20-21, 28-29.

Petitioner conceded in his memorandum that he did not raise all his claims in state court. *Id*. at PageID.21 n.1. On June 6, 2019, he moved to stay the petition to allow him to exhaust his state court remedies. On October 24, 2019, the Court granted Petitioner's Motion for a Stay and administratively closed this case. ECF No. 5.

On June 6, 2019, Petitioner filed a motion for relief from judgment in the state trial court, raising claims concerning ineffective assistance of trial and appellate counsel. ECF No. 12-18. The trial court denied Petitioner's ineffective assistance of counsel claims under Michigan Court Rule 6.508(D)(3) because he failed to show good cause for failing to raise the issue on direct appeal. ECF No. 12-20. Petitioner then filed a delayed application for leave to appeal in the Michigan Court of Appeals, which was denied. ECF No. 12-22, PageID.1509. The Michigan Supreme Court also denied Petitioner's application for leave on the basis that he "failed to meet

the burden of establishing entitlement to relief under MCR 6.508(D)."

*People v. Walker*, 941 N.W.2d 637, 638 (Mich. 2020).

On March 19, 2020, Petitioner returned to this Court with his motion to reopen the habeas proceedings and filed an amended petition raising the following claims:

> I.  The unreasonable delay between the date Mr. Walker was charged with the offenses and his arrest and arraignment, a period of 17 months, violated his right to a fair trial under the 5th Amendment of the U.S. Constitution, and his trial counsel's failure to raise the issue in the trial court violated his right to effective assistance of counsel.

> II.  The unreasonable delay between the date Mr. Walker was charged with the offenses and his arrest and arraignment, a period of 17 months, violated his right to a speedy trial under the 6th Amendment of the U.S. Constitution, and his trial counsel's failure to raise the issue in the trial court violated his right to effective assistance of counsel.

> III.  Mr. Walker's trial counsel was ineffective in failing to investigate six different factual areas that would have resulted in a different outcome of the trial in violation of Mr. Walker's right to effective assistance of counsel under the 6th Amendment of the U.S. Constitution, and his appellate counsel's failure to raise the ineffectiveness of trial counsel on this issue, violated his right to the effective assistance of appellate counsel under the 6th Amendment of the U.S. Constitution.

ECF No. 7.

Respondent subsequently filed an answer in opposition to the amended petition contending that it should be denied because all claims are procedurally defaulted and lack merit.

## II.   STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III. DISCUSSION

### A. Claim I: Pre-Arrest Delay in Violation of the Fifth Amendment and Related Ineffective Assistance of Counsel Claim.

Petitioner first argues that he is entitled to habeas relief because the 17-month delay between the date he was charged and his actual arrest and arraignment date violated his due process rights under the Fifth Amendment. Respondent contends that Petitioner's claim is procedurally

defaulted and the related ineffective assistance of counsel claim lacks
merit. The Court agrees.

### 1. Procedural Default Standard

In the habeas context, a procedural default is "a critical failure to
comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997).
"[A] federal court will not review the merits of [a state prisoner's] claims,
including constitutional claims, that a state court declined to hear because
the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*,
566 U.S. 1, 9 (2012). But a habeas petitioner can obtain federal court
review of claims despite procedural default by showing that there was
"cause for the default and actual prejudice as a result of the alleged
violation of federal law, or demonstrat[ing] that failure to consider the claims
will result in a fundamental miscarriage of justice." *Coleman v. Thompson*,
501 U.S. 722, 750 (1991). The Sixth Circuit noted that "where a
straightforward analysis of settled state procedural default law is possible,
federal courts cannot justify bypassing the procedural default issue."
*Sheffield v. Burt*, 731 F. App'x 438, 441 (6th Cir. 2018).

In the Sixth Circuit, "[a] habeas petitioner procedurally defaults a
claim when '(1) [he] fails to comply with a state procedural rule; (2) the
state courts enforce the rule; [and] (3) the state procedural rule is an

adequate and independent state ground for denying review of a federal constitutional claim.' " *Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020) (quoting *Wheeler v. Simpson*, 852 F.3d 509, 514 (6th Cir. 2017)); *accord Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc).

These three factors are satisfied here. First, the relevant procedural rule is "the general and longstanding rule in Michigan that 'issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances.' " *People v. Cain*, 869 N.W.2d 829, 832 (Mich. 2015) (quoting *People v. Grant*, 520 N.W.2d 123, 128 (Mich. 1994)). "[R]equiring a contemporaneous objection provides the trial court 'an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant's constitutional and nonconstitutional rights.' " *People v. Carines*, 597 N.W.2d 130, 139 (Mich. 1999) (quoting *Grant*, 520 N.W.2d at 130). This factor is satisfied because, as the Michigan Court of Appeals determined, counsel did not raise the pre-arrest delay issue during trial. *See Walker*, 2016 WL 7233687, at *4.

The second procedural-default factor also is satisfied because the Michigan Court of Appeals reviewed Petitioner's claim for "plain error" due to Petitioner's failure to preserve his claim for appeal. *Id.* "[A] state

appellate court's review for plain error is enforcement of a procedural rule."
*Theriot*, 982 F.3d 999 at 1004; *accord Hinkle v. Randle*, 271 F.3d 239, 244
(6th Cir. 2001) ("[W]e view a state appellate court's review for plain error as
the enforcement of a procedural default.").

The third factor requires a determination of whether the state
procedural rule is an adequate and independent state ground for denying
review of a federal constitutional claim. The Sixth Circuit has determined
that "Michigan's contemporaneous-objection rule 'constitutes an adequate
and independent state ground for foreclosing federal review.' " *Theriot*, 982
F.3d 999 at 1004 (quoting *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir.
2011)). Thus, the third and final procedural-default factor is satisfied—
Petitioner must now show cause for his procedural error and actual
prejudice to have his claim heard on the merits.

### 2. Excusing the Procedural Default

"A state prisoner may overcome the prohibition on reviewing
procedurally defaulted claims if he can show 'cause' to excuse his failure to
comply with the state procedural rule and 'actual prejudice resulting from
the alleged constitutional violation.'" *Davila v. Davis*, 137 S. Ct. 2058, 2064-
2065 (2017) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). "To
establish 'cause' . . . the prisoner must 'show that some objective factor

external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Id*. at 2065 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). A petitioner must present a substantial reason to excuse the default. *Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467, 493-494 (1991).

To the extent that Petitioner alleges ineffective assistance of trial counsel as cause to excuse his procedural default, such argument fails. As explained below in Section III.A.3, Petitioner fails to show that counsel was constitutionally ineffective for failing to raise the pre-arrest delay issue in the trial court. Petitioner, therefore, fails to establish cause to excuse his procedural default. The Court need not address the issue of prejudice when a habeas petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir.1983); *Bell v. Smith*, 114 F.Supp.2d 633, 638 (E.D. Mich. 2000). Nonetheless, the Court finds that Petitioner cannot establish prejudice (or entitlement to habeas relief) because his claim—that the delay between the date he was charged and his actual arrest and arraignment

15

date violated his Fifth Amendment due process rights—lacks merit for the reasons stated by the Michigan Court of Appeals in reviewing the issue for plain error. *See Walker*, 2016 WL 7233687, at *4-7 (holding that Petitioner does not explain and only speculates about how the passage of time prevented him from obtaining exculpatory evidence).

Petitioner also fails to show that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. Indeed, the evidence presented at trial to prove that he committed the crimes was very strong. Petitioner's first claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

### 3. Ineffective Assistance of Counsel Claim

Petitioner asserts as an independent claim that his trial attorney was ineffective for failing to file a motion to dismiss based on the pre-arrest delay. The Michigan Court of Appeals rejected this claim on the merits. The appellate court first determined that Petitioner's underlying pre-arrest delay claim lacked merit because he failed to establish the necessary elements to succeed on that claim. To establish a delay-in-arrest claim, "[the] Defendant must present evidence of actual and substantial prejudice [to his right to a fair trial], not mere speculation." *Walker*, 2016 WL 7233687, at *5. The Michigan Court of Appeals concluded that "defendant's failure to establish actual and substantial prejudice means that defendant's delay-in-arrest claim is meritless. Counsel is not ineffective for failing to raise a meritless motion." *Id*. at *7.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel—when counsel is ineffective, that right is abridged. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). An ineffective assistance of counsel claim has two components: a petitioner must show that (1) counsel's performance was deficient and (2) that deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness." *Id*. at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quotation marks omitted) (quoting *Strickland*, 466 U.S. at 688).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown

in the adversary process that renders the result unreliable." *Id*. at 687. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 689. Accordingly, a petitioner claiming ineffective assistance bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.*

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law regarding the ineffective assistance of counsel. Petitioner fails to show that trial counsel was deficient in failing to file a motion based on the pre-arrest delay. As the state appellate court determined, Petitioner's pre-arrest delay did not violate his constitutional due process rights because nothing shows how the delay prejudiced him. *Walker*, 2016 WL 7233687, at *4-7. Moreover, the state-court record shows that the trial court would have likely denied a motion to dismiss based on the pre-arrest delay, given the testimony showing that Petitioner evaded the police and the prosecution's continued efforts to locate Petitioner during the time of alleged delay. ECF No. 12-12, PageID.1081-83; *id*. at PageID.1036-37, 1044-49; ECF No. 12-14, PageID.1126-1127. Because Petitioner fails to show that trial counsel had a legitimate basis to bring a motion to dismiss as result of the 17-month

delayed arrest, trial counsel's failure to file a meritless motion to dismiss does not constitute ineffective assistance of counsel. *Goldsby v. United States*, 152 F. App'x. 431, 438 (6th Cir. 2005).  Further Petitioner contends unpersuasively and in conclusory fashion that prejudice resulted from trial counsel's failure to file the motion. Because Petitioner fails to establish either prong of his ineffective assistance of counsel claim, he is not entitled to habeas relief on the claim.

### B. Claim II: The Pre-Arrest Delay in Violation of Petitioner's Speedy Trial Rights and Related Ineffective Assistance of Trial and Appellate Counsel Claims.

Petitioner next argues that he is entitled to habeas relief because the 17-month delay between the date he was charged and his actual arrest and arraignment date violated his speedy trial rights under the Sixth Amendment, and that trial and appellate counsel were ineffective for failing to address the issue. Respondent contends that this claim is procedurally defaulted because Petitioner failed to present this claim to in state court and he has no remaining state-court remedy. The Court agrees.

A prisoner seeking federal habeas relief must first exhaust his state court remedies by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. § 2254(b); *Coleman*, 501 U.S. at 731; *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Michigan state

prisoners must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The petitioner bears the burden of showing that state court remedies have been exhausted. *Prather v. Rees*, 822 F.2d 1418, 1420, n.3 (6th Cir. 1987). When a petitioner fails to exhaust his claims, and has no remaining state-court remedy, his claims are properly deemed procedurally defaulted rather than simply unexhausted. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Landrum v. Mitchell*, 625 F.3d 905, 918 (6th Cir. 2010).

Here, Petitioner did not raise his speedy trial claim before the state appellate courts on direct review or the state trial court on collateral review. Petitioner has already filed a motion for relief from judgment in the state trial court, but that motion did not present his speedy trial claim. This precludes him from going back to state court to exhaust that claim. *See* Mich. Ct. R. 6.502(G)(1) (allowing only one motion for relief from judgment per conviction). As a result, he no longer has a state remedy available. Because Petitioner failed to properly exhaust his habeas claim and now lacks an available remedy to do so, his claim is deemed procedurally defaulted. *See Carter v. Mitchell*, 693 F.3d 555, 564 (6th Cir. 2012); *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002). He must show cause for his

21

procedural error and actual prejudice to have his claim heard on the merits now.

First, to the extent that Petitioner relies on trial counsel's failure to properly preserve the issue as cause to excuse his default, he cannot prevail because he has not exhausted that claim of ineffective assistance of counsel in state court. It is well settled that an ineffective assistance of counsel claim asserted as cause to excuse a procedural default is an independent constitutional claim which requires proper exhaustion in state court. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Because Petitioner has not exhausted this ineffective assistance of trial counsel claim in state court, he cannot rely upon it to establish cause to excuse his procedural default. *See, e.g.*, *Jacobs v. Mohr*, 265 F.3d 407, 417-18 (6th Cir. 2001).

Second, Petitioner cannot rely on appellate counsel's failure to raise his speedy trial claim on direct appeal as cause to excuse his own failure to exhaust the claim on state post-conviction review. Appellate counsel's actions on direct appeal would not speak to or excuse Petitioner's choice not to properly pursue this claim in his motion for relief from judgment. *See Gadomski v. Renico*, 258 F. App'x 781, 784 (6th Cir. 2007).

Finally, Petitioner also fails to show that a fundamental miscarriage of justice has occurred. As stated, the miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup*, 513 U.S. at 326-27. Petitioner makes no such showing. Therefore, this claim is barred by procedural default and does not warrant habeas relief.

### C. Claim III: Ineffective Assistance of Trial and Appellate Counsel

Lastly, Petitioner argues that trial counsel provided ineffective assistance by failing to investigate six different areas that Petitioner claims would have changed the outcome of the trial and that appellate counsel provided ineffective assistance by failing to claim trial counsel's ineffective assistance on direct appeal. The Respondent contends that both ineffective assistance of counsel arguments are procedurally defaulted because Petitioner first raised them on collateral review and the state courts denied relief pursuant to Michigan Court Rule 6.508(D)(3). The Court agrees.

As discussed, federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright*, 433 U.S. at 85-87. Procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied on by the state courts to deny relief, and the

procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d

517, 524 (6th Cir. 2006); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir.

2005). "A procedural default does not bar consideration of a federal claim

on either direct or habeas review unless the last state court rendering a

judgment in the case 'clearly and expressly' states that its judgment rests

on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-264 (1989). A

federal habeas court looks to the last explained state court ruling to make

this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-805 (1991).

Petitioner first presented his ineffective assistance of trial counsel

claim to the state courts in his motion for relief from judgment. ECF No. 12-

18. The last decision concerning his motion is from the Michigan Supreme

Court. ECF No. 12-24. That court denied relief pursuant to Michigan Court

Rule 6.508(D), which provides, in part, that a court may not grant relief to a

defendant if the motion for relief from judgment alleges grounds for relief

which could have been raised on direct appeal, absent a showing of good

cause for the failure to raise such grounds previously and actual prejudice

resulting therefrom. *See* Mich. Ct. R. 6.508(D)(3). But the Michigan

Supreme Court's form order merely cites to Michigan Court Rule 6.508(D),

making it ambiguous and unexplained. *See Guilmette,* 624 F.3d at 291-92.

The Court must "look through" any unexplained orders of the Michigan

24

appellate courts to the state trial court's decision to determine the basis for the denial of state post-conviction relief. *See id.*

Here, the Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal for failure to show that the trial court erred in denying relief from judgment, and the trial court ruled that the petitioner failed to show good cause and actual prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise the claims on direct appeal of his convictions. The state courts thus clearly relied upon a procedural default to deny relief. Accordingly, the ineffective assistance of trial and appellate counsel claim is procedurally defaulted.

Therefore, Petitioner waives the right to federal habeas review absent either a showing of cause for the default and actual prejudice resulting from the alleged constitutional violation or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753.

To the extent that Petitioner relies on ineffective assistance of appellate counsel as cause to excuse his procedural default, he has not shown that appellate counsel was ineffective. It is well established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Strategic and tactical choices regarding which

issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F. 3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner argues that appellate counsel should have raised the claim that trial counsel failed to investigate various aspects of the case, including "the records from Fed Ex that would have demonstrated the complainant's lack of credibility and enhanced that of Mr. Walker" and the 911 call. ECF No. 7, PageID.268. Importantly, however, Petitioner fails to explain how raising this claim would have resulted in a reversal on appeal. In its discussion of the pre-arrest delay claim, the Michigan Court of Appeals held that trial counsel's failure to obtain evidence supporting his claims did not excuse Petitioner's failure to make a factual record for his claims. Specifically, the Michigan Court of Appeals stated that:

In seeking to excuse his failure to make a factual record regarding his claims, defendant argues that his counsel failed to provide effective assistance by obtaining the evidence to support these claims. As our Supreme Court summarized in *People v. Carbin*, 463 Mich. 590, 599–600; 623 NW2d 884 (2001):

A defendant seeking a new trial on the ground that trial counsel was ineffective bears a heavy burden. To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in Strickland v. Washington. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim.

\*\*\*

Even if counsel had been able to establish that there was a relocation agreement or that the victim had placed the Fed Ex order, that would not have shown that defendant did not beat her, threaten her, touch her sexually, discharge a gun at her, confine her, or steal her property. Therefore, defendant has not established the first prong of the *Strickland* test because he failed to show that his counsel made a serious error. And defendant has not satisfied the second prong of the test because he failed to prove that, if counsel did make a serious error, there was a reasonable probability that the result of the trial would have been different.

27

*Walker*, 2016 WL 7233687, at *6-7 (internal quotations and citations omitted).

The Michigan Court of Appeals clearly found meritless the argument that trial counsel was ineffective for failure to investigate certain evidence, and Petitioner's ineffective assistance of appellate counsel claim here rests on a similar argument regarding trial counsel's failure to investigate certain evidence discussed by the Michigan Court of Appeals. Therefore, Petitioner can neither show that appellate counsel acted unreasonably nor that he was prejudiced by counsel's decision to not claim ineffective assistance of trail counsel for failing to investigate where the state appellate court rejected a similar claim. For these reasons, Petitioner's ineffective assistance of trial and appellate counsel claim lacks merit.

Additionally, Petitioner has not presented any new reliable evidence to support an actual innocence claim. Accordingly, the Court cannot consider his ineffective assistance of trial and appellate counsel claim despite his procedural default. The Court, therefore, denies Petitioner habeas relief on that claim.

## IV. CERTIFICATE OF APPEALABILITY

The Court declines to grant a certificate of appealability because Petitioner has not made a substantial showing of the denial of a

constitutional right. *See* 28 U.S.C. § 2253(c)(2). In addition, reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims nor conclude that the claims deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Therefore, the Court denies a certificate of appealability.

## V. CONCLUSION

Based upon the foregoing, **IT IS ORDERED** that the amended petition for a writ of habeas corpus (ECF No. 7) is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS SO ORDERED.**

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: February 15, 2024